W.R. COMPANY, a North Carolina Corporation, Petitioner v. NORTH CAROLINA PROPERTY TAX COMMISSION, sitting as the State Board of Equalization and Review; John B. Lewis, Chairman; Paul Whitfield, Vice Chairman; Haywood Edmundson, IV, C. Don Langston, and John L. Turner, Members, Respondents and Cumberland County, Intervening Respondent

No. 8012SC130

(Filed 19 August 1980)

1. **Taxation § 25.4– ad valorem taxes – present use valuation – principal business of corporation – determining factors**

    Factors which should be considered in determining the principal business of a corporation for present use valuation include gross income, net income or profit and its source, annual receipts and disbursements, the purpose of the corporation as stated in its corporate charter, and the actual corporate function in relation to its stated corporate purpose.

2. **Taxation § 25.4– ad valorem taxes – property of corporation – principal business of selling land – no qualification for present use valuation**

    Evidence was sufficient to support the decision of the Property Tax Commission that petitioner was not a corporation which qualified for present use valuation, though it was a corporation owned by natural persons who were themselves actively engaged in farming, since the evidence tended to show that since incorporation in 1967 petitioner received $4,444,600 in gross income from the sale of land while its farming operations brought it only $31,694.42; over 99% of the gross income of petitioner came from a

source other than one qualified for present use valuation; none of this income was disbursed in a way which would contribute to the farming operations; the income instead went to retiring the mortgage indebtedness of $1,200,000 and to the income of the shareholders; the actual corporate function was to sell land; in every year of its existence except the recession year of 1974 petitioner made at least one sale of real estate; and petitioner's corporate charter stated that its purpose was to carry on and transact a general real estate business and not once was an agricultural, horticultural, or forestry activity mentioned.

APPEAL by respondents and intervening respondent from *Bailey, Judge.* Judgment entered 1 November 1979 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 10 June 1980.

Petitioner sought judicial review pursuant to G.S. 150A-43 in superior court of a final decision of the Property Tax Commission sitting as the State Board of Equalization and Review. The Property Tax Commission upheld the denial by the Cumberland County Board of Equalization and Review of petitioner's 1977 application for an agricultural use value assessment pursuant to G.S. 105-277.2 to -277.7. The matter was before the Property Tax Commission on stipulated facts which can be summarized as follows.

Petitioner, a corporation with a business address in Fayetteville, North Carolina, owns certain real property between McPherson Church Road, Morganton Road and Owen Drive Bypass in Cumberland County. The property, purchased by petitioner in 1967 contains no improvements and consists of 100 clear and cultivated acres and 253.57 woodland acres. The county appraised the land for ad valorem tax purposes at $2,327,490.00. Petitioner appraised the property at $294,740.00 based on its present use value as computed by the county in accordance with its present use value schedule for rural land prepared in accordance with G.S. 105-277.6(c). Petitioner applied to the Cumberland County Board of Equalization and Review on 25 April 1977 for a present use valuation of the property which was denied. Timely appeal was made to the Property Tax Commission.

The property is a part of what is known locally as the Marsh-Purdie Farm which was listed by prior owners as 603.67 acres (460 cleared acres and 143.67 woodland acres). It had been in continuous operation as a farm from 1935 until 1955 when it was acquired by Longview Development Company which continued the farm operation. The property was Longview Development Company's only asset and the farming of this property was the only activity of the company. In November 1967, the stockholders of petitioner acquired all of the capital stock of Longview Development Company which was merged into petitioner, a North Carolina corporation chartered 10 October 1967. J.P. Riddle and Thomas Wood are the sole shareholders in petitioner. By this merger, petitioner acquired the Marsh-Purdie Farm. On 16 November 1967, petitioner executed a deed of trust for the property securing a loan of $1,200,000.00. The cleared land and woodlands which are the subject of this appeal have been continuously used as such since 1967 and prior thereto. The only sources of income to petitioner from 1967 through 1977 have been the sale of real estate, agricultural rents for lands and allotments, and, in 1977 only, the sale of crops.

Beginning in December, 1967 and each year thereafter through 1977, petitioner conveyed numerous parcels out of the 603 acre tract. A summary of these conveyances and the consideration received as indicated by revenue stamps is as follows:

| YEAR | PURCHASER | NUMBER OF ACRES | CONSIDERATION INDICATED BY REVENUE STAMPS |
|------|-----------|-----------------|-------------------------------------------|
| 1977 | Red Lobster Inns | 1.61 | $ 156,500.00 |
|      | Seus Fayetteville | 6.962 | $ 417,000.00 |
|      | J.H. Perkins/ J.C. Ellsworth | 5.57 | $ 350,000.00 |
|      | V-2, Inc. | .75 | $ 96,000.00 |
| 1967 | John H. High | 1.56 | $ 109,000.00 |
|      | Frederio Pradio | .60 | $ .80,000.00 |
|      | City of Fayetteville | 1.33 | $ 29,000.00 |
| 1975 | Caldun Leasing Co. | .52 | $ 88,000.00 |
| 1973 | Exxon | .77 | $ 180,000.00 |
|      | Herbert H. Thorp | .71 | $ 51,500.00 |

W. R. Company v. Property Tax Comm.

| YEAR | PURCHASER | NUMBER OF ACRES | CONSIDERATION INDICATED BY REVENUE STAMPS |
|------|-----------|-----------------|-------------------------------------------|
| 1972 | Best Products | 5.00 | $ 200,000.00 |
|      | State Highway Commission | 49.30 | $ 739,000.00 |
|      | Joseph Barr | 2.30 | $ 100,000.00 |
|      | Metropolitan Developers | .80 | $ 75,000.00 |
|      | Edward's Music Co. | .344 | $ 30,000.00 |
|      | J.P. Riddle | 5.50 | $ 11,000.00 |
| 1971 | Francis Wells | 1.23 | $ 42,000.00 |
| 1970 | Autry Chrysler Plymouth | 9.50 | $ 140,000.00 |
|      | Gibson Smith | 90.00 | * $ 900,000.00 |
| 1969 | Parrous Association | 1.29 | $ 50,000.00 |
|      | David Newton/ R.E. Bryan | 1.84 | $ 25,000.00 |
|      | James Hutchinson | 3.50 | $ 26,500.00 |
|      | J.P. Riddle/ Thomas Wood | 24.87 | $ 50,000.00 |
|      | Patterson Bonded Warehouse | 6.00 | $ 60,000.00 |
|      | Robert Hall | 1.03 | $ 33,000.00 |
| 1968 | Gulf Oil Company | 1.10 | $ 95,000.00 |
| 1967 | Humble Oil Company | 1.82 | $ 110,000.00 |

| YEAR | EASEMENTS TO DEPARTMENT OF TRANSPORTATION | CONSIDERATION |
|------|-------------------------------------------|---------------|
| 1972 | | $ 1,000.00 |
| 1974 | | $ 199,000.00 |
| 1974 | | $ 1,000.00 |
| 1975 | | $ 100.00 |
| TOTALS | | $4,444,600.00 |

Beginning in 1968 and continuing through 1976, petitioner leased the remaining cleared acreage and leased the agricultural allotments applicable to the land. The cleared acreage was cultivated and produced bean and corn crops each year.

Throughout the period in question, the woodlands were cared for as forestland by petitioner. In December 1976, petitioner employed a farm operator by resolution of its board of directors and under a contract of employment. In 1977, petitioner engaged in the actual farming of the land rather than the mere leasing of the land. The income received by petitioner from farm rentals, allotment rentals and sale of crops from 1968 through 1977 is as follows.

| YEAR | SOURCE OF INCOME | AMOUNT OF INCOME |
|------|------------------|------------------|
| 1977 | Lease Farm Allotments | $ 1,976.00 |
|      | Sale of Corn | $ 7,422.00 |
| 1976 | Lease Farm Allotments | $ 1,077.60 |
|      | Crop Shares | $ 2,000.00 |
| 1975 | Lease Farm Allotments | $ 1,055.85 |
|      | Crop Shares | $ 2,000.00 |
| 1974 | Lease Farm Allotments | $ 1,378.05 |
| 1973 | Lease Farm Allotments | $ 1,419.76 |
|      | Food Grain Program | $ 1,309.84 |
| 1972 | Lease Farm Allotments | $ 871.05 |
|      | Food Grain Program | $ 2,425.52 |
| 1971 | Lease Farm Allotments | $ 464.56 |
|      | Crop Shares | $ 1,800.00 |
|      | ASC Payments | $ 1,496.11 |
| 1970 | Lease Farm Allotments | $ 348.39 |
| 1969 | Lease Farm Allotments | $ 656.43 |
|      | ASC Payments | $ 2,115.10 |
| 1968 | ASC Payments | $ 1,256.15 |
| 1967 | Lease Farm Allotments | $ 622.00 |
| TOTALS | | $31,694.42 |

Petitioner had applied for present use valuation in 1976. The County Board of Commissioners requested an Attorney General's opinion which was furnished by letter dated 9 November 1976. In his opinion, the Attorney General stated,

W. R. Company v. Property Tax Comm.

Pursuant to G.S. 105-277.3, "individually owned" agricultural land may qualify for special, "present use" classification. Where the owner is a corporation, "individually owned" means owned by a corporation "having as its principal business" the commercial production of crops, trees, or fruits and vegetables. All shareholders must be "actively engaged" in such activities. G.S. 105-272.2(4).

We believe W.R. Company fails to qualify for the "present use" classification claimed by it because an active engagement in the commercial production of crops, trees, fruits, or vegetables, is not its "principal business." W.R. Company has no employees "farming" the property in question. W.R. Company leases or rents its property thereafter used by another for apparently qualifying purposes. Therefore, but without resolving the proper consideration to be accorded its established history of continuous land sales, it is our opinion that the "principal business" of W.R. Company is the rental of farm property, not the cultivation and harvesting, and commercial production, of farm property.

Upon receipt of this opinion, petitioner abandoned its application for 1976 present use valuation and took what it considered the necessary steps to qualify for 1977 present use valuation by corporate resolution and contract with Edgar Eden who was employed to farm the remaining portion of the Marsh-Purdie farm for petitioner.

Thomas Wood and J.P. Riddle are the sole stockholders of petitioner. Wood has been engaged in farming and other endeavors. He was born and raised on a Hoke County farm. In addition to his interest in the remainder of the Marsh-Purdie Farm held by petitioner, he operates a farm which he purchased in 1955 along with renting an additional 100 acres of adjoining land for five years. The farm was recently placed in the soil bank. Riddle purchased one of the larger farms in Cumberland County in 1961 which he operated as landlord for four years. Including his interest in the Marsh-Purdie Farm, he has acquired interests in seven other farms. In 1977, he was leasing his interest in 33,816 pounds of tobacco.

The facts stipulated by the parties were accepted by the Property Tax Commission. The Commission also found the following additional facts.

(1) That the subject property, known as the Marsh-Purdie Farm, has been continuously operated as a farm since 1935.

(2) That the property was acquired by Longview Development Corporation in 1955, which firm continued to operate it as a farm until November, 1967, when the sole stockholders of W.R. Company — J.P. Riddle and Thomas Wood — acquired the capital stock and assets of Longview Development Corporation, which was then merged into W.R. Company.

(3) That at the time of the transfer, W.R. Company obtained a loan of $1,200,000 from Cameron-Brown Mortgage Company with the 603.67 acre tract of land serving as security for the loan.

(4) That from 1968 through 1976, W.R. Company rented the cleared land and allotments for the purpose of cultivation.

(5) That during the period 1967 through 1977, appellant received income of $31,694.42 from the rental of the cleared land, the allotments, payments under government programs and, in 1977 only, the sale of corn.

(6) That beginning in 1967 with the sale of 1.82 acres to Humble Oil Company for $110,000, W.R. Company has sold at least 27 tracts or parcels and four easements from the subject tract totalling $4,444,600.

(7) That at least one sale has taken place each year since 1967 except for 1974.

(8) That three sales were made in 1976 and four in 1977.

(9)  That with the exception of a 49.3 acre tract sold to the Department of Transportation for a highway and a 1.33 acre parcel sold to the City of Fayetteville, all of the sold tracts are being used or intended to be used for commercial purposes.

(10)  That one of the tracts has been developed as a large regional shopping center.

(11)  That as the result of these sales, the subject tract has been reduced from 603.67 acres in 1967 to 353.67 acres as of 1977.

(12)  That although their principal business is real estate development, both of the shareholders of W.R. Company — Messrs Riddle and Wood — have owned and operated farms for many years.

The Property Tax Commission concluded from its review of the applicable law, evidence and findings of fact that the property did not meet the requirements of G.S. 105-277.2 to -277.7 for assessment at its agricultural or forest use value.

The Property Tax Commission elaborated on its conclusion as follows.

From our review of the applicable law, the evidence and our findings of fact, we conclude and so decide that the subject property does not meet the requirements of the statute for assessment at its agricultural or forest use value. The parties have stipulated, and the evidence shows, that the land itself is being tended in a manner that would qualify the property for the preferential assessment. It may also be that the shareholders are "actively engaged" in the operation of the property, but we do not believe the evidence discloses any real activity on their part with respect to the cultivation of the crops or the management of the woodland. What the evidence does demonstrate, however, is that the principal activity of W.R. Company is not the commerical production of agricultural or forest products. Since acquiring the property in 1967, appellant has sold off

more than 40% of the tract and except for a tract to be used for highway and another to be used for public recreation, all of the parcels sold are being used or intended to be used for commercial purposes. One of the tracts has been developed into a large regional shopping center which influences the entire area in which the remainder of the subject property is located and strongly indicates how it will be used in the not too distant future. The subject property is in transition from agricultural and forest use to commercial use and the cultivation of crops on the land is incidental to the obvious corporate plan to sell the property for development purposes. This is also evidenced by the fact that, except for 1974 when no land was sold from the tract, the farm-related income constituted only a minor fraction of the corporation's total income. In fact, for the period 1967 through 1977, income from the sale of land or easements amount to 99.29% of the corporation's total income. In summary, we conclude that the principal activity of W.R. Company is the sale of land for development and not the commercial production of agricultural or forest products.

Petitioner sought judicial review of this order of the Property Tax Commission which affirmed the decision of the Cumberland County Board of Equalization and Review. Petitioner claimed that the conclusions by respondent that the shareholders were not actively engaged in the agricultural operation of the subject property and that the principal activity of petitioner was not the production of agricultural or forest products "were unsupported by substantial evidence in view of the entire record as submitted or that the conclusions were affected by other errors of law." The trial court reviewed the proceedings of the Property Tax Commission and reversed the decision of the Commission. The trial court upon reviewing the entire record and hearing arguments of counsel concluded "as a matter of law that the facts found by the North Carolina Tax Commission fail to support its conclusion of law that the principal activity of W.R. Company is the sale of land for development." The trial court concluded that as a matter of law, "the principal activity of W.R. Company is the commercial production of agricultural or forest products." Respondent and intervenor respondent appeal from this judgment of the trial court.

*Rose, Thorp, Rand and Ray, by Herbert H. Thorp and Ronald E. Winfrey, for petitioner appellee.*

*Clark, Shaw, Clark and Bartelt, by Heman R. Clark, for respondent appellants.*

VAUGHN, Judge.

Judicial review of a decision of the Property Tax Commission sitting as the State Board of Equalization and Review is pursuant to G.S. 150A-51, which provides:

The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the agency findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Unsupported by substantial evidence admissible under G.S. 150A-29(a) or G.S. 150A-30 in view of the entire record as submitted; or

(6) Arbitrary or capricious.

If the court reverses or modifies the decision of the agency, the judge shall set out in writing, which writing shall become a part of the record, the reasons for such reversal or modification.

In its judgment, the trial court concluded, as a matter of law, that "the facts found by the North Carolina Property Tax Commission fail to support its conclusion of law that the principal

activity of W.R. Company is the sale of land for development." The trial court also concluded as a matter of law that "upon review . . . of the entire record . . . the principal activity of W.R. Company is the commercial production of agricultural or forest products." The trial court reversed the decision of the Property Tax Commission, pursuant to G.S. 150A-51(4), because it was affected by "error of law." The trial court also reversed the Property Tax Commission decision pursuant to G.S. 150A-51(5) because it was "unsupported by substantial evidence . . . in view of the entire record as submitted." The question raised by this appeal is whether petitioner, a corporation, qualifies for present use value assessment. This involves interpreting the statutory definition of a qualifying corporation in the context of the present use valuation, *i.e.*, whether the Property Tax Commission decision was "affected . . . by error of law." It also involves a review of the Property Tax Commission decision pursuant to the "whole record" test to determine whether the decision is supported by competent, material and substantial evidence in view of the entire record as submitted. *See Underwood v. Board of Alcoholic Control*, 278 N.C. 623, 181 S.E. 2d 1 (1971).

At least thirty-five states other than North Carolina have enacted some sort of preferential assessment statute which provides a lower property tax for land used for agricultural purposes. Alaska Stat. § 29.53.035 (1979); Ariz. Rev. Stat. Ann. §§ 42-136, -227 (Supp. 1979); Ark. Stat. Ann. §§ 84-483 to -486 (Supp. 1979); Cal. Gov't code §§ 65560-65570 (West Supp. 1979), Cal. Rev. and Tax Code §§ 421-430.5 (West Supp. 1979); Colo. Rev. Stat. Ann. § 39-1-103(5) (1974), § 137-1-3(6) (Supp. 1971); Conn. Gen. Stat. Ann. §§ 7-131c to -131k, 12-63 (1972); Del. Code Ann. tit. 9, §§ 8328-8337 (1975); Fla. Const. art. VII, § 4(a), Fla. Stat. Ann. § 193.461 (Supp. 1980); Hawaii Rev. Stat. § 246-12(b) (1976); Idaho Code § 63-112 (Supp. 1979); Ill. Ann. Stat. ch. 120, § 501a-1 (Smith-Hurd Supp. 1980); Ind. Code Ann. § 6-1.1-4-13 (Burns 1978); Iowa Code Ann. § 441.21 (West Supp. 1980); Ky. Const. § 172A, Ky. Rev. Stat. Ann. §§ 132.450, .454 (1979); Me. Rev. Stat. tit. 36, §§ 1101-1118 (1978); Md. Ann. Code art. 81, § 19(b) (1975); Mass. Gen. Laws Ann. ch. 61A, §§ 1-24 (West Supp. 1980); Minn. Stat. Ann. §§ 273.111, .13 (West Supp. 1980); Mo. Ann. Stat. §§ 137.017-.026 (Vernon Supp. 1980); Mont. Rev. Codes Ann. §§

15-7-201 to -215 (1979); Neb. Const. art. VIII § 1, Neb. Rev. Stat. §
77-1343 to -1348 (1976); N.J. Const. art. VIII, § 1(b), N.J. Stat.
Ann. §§ 54:4-23.1 to -23.23 (Supp. 1980); N.M. Stat. Ann. § 7-36-20
(1978); Ohio Rev. Code Ann. §§ 5713.30-.38 (Anderson Supp.
1979); Or. Rev. Stat. §§ 308.345-.406 (1979); Pa. Stat. Ann. tit. 16,
§§ 11941-11947 (Purdon Supp. 1980); R.I. Gen. Laws § 44-5-12
(1970); S.D. Compiled Laws Ann. § 10-6-31 to –31.3 (Supp. 1979);
Tenn. Const. art. 2, § 28, Tenn. Code Ann. § 67-601(10) (1976);
Tex. Const. art. 8, § 1-d (Supp. 1980); Utah Const. art. XIII, § 3,
Utah Code Ann. §§ 59-5-86 to -105 (1973); Vt. Stat. Ann. tit. 32, §
3751-3760 (Supp. 1979); Va. Code §§ 58-769.4 to -769.15:1 (1974,
Supp. 1980); Wash. Rev. Code Ann. §§ 84.34.010-.922 (Supp. 1980);
Wyo. Stat. § 39-2-103 (1977). North Carolina provides for this
preferential assessment in G.S. 105-277.2 to -277.7.

At least three reasons have been offered for the adoption of
such tax legislation. First, such legislation is intended to re-
lieve those maintaining land in a productive agricultural state
rather than developing it for its commercial or residential use
from rising property tax bills based on the higher value of the
land in a developed, nonagricultural use. Henke, *Preferential
Property Tax Treatment for Farmland,* 53 Or. L. Rev. 117, 119 n.
8 (1974); Note, *Ad Valorem Taxation for Agricultural Land in
Tennessee,* 4 Mem. St. L. Rev. 127, 136 n. 38 (1973). Second, it is
seen as a way of preserving arable land in fringe areas near
large markets and as providing open or green spaces near these
heavily populated areas. Henke, *supra,* at 120. Third, most of
the legislative enactments contain provisions for penalties or
tax recapture if the lands given preferential treatment are
developed into nonagricultural uses which thereby provides a
deterrent to such development. This type of legislation has
received considerable criticism which tends to refute the three
reasons for its adoption. First, the programs are for the most
part applicable to all people and all lands statewide resulting in
a tax windfall for those not financially pressed by taxes and tax
reduction for land which is not the object of development pres-
sures. It is an unfair subsidization of farmers and land specula-
tors who are not in need of tax shelter. *See* Carman & Polson,
*Tax Shifts Occurring as a Result of Differential Assessment of
Farmland: California, 1968-69,* 24 Nat'l Tax J. 449, 455 (1971).
Second, the use valuation method does not really preserve

prime agricultural land near urban cities for any great length of time but instead extends development speculation for a short period of time. Henke, *supra*, at 123-24. Third, the tax base is reduced, placing an undue burden on those holding nonagricultural land to make up the deficit, and the tax penalties and recaptures on sale in effect benefit a land speculator who can use them to reduce his ordinary income and capital gains from the sale in the year in which he makes the sale. *See* IRS Code § 164 (a) (1); G.S. 105-147(6). The penalties would likely be deductible interest. In fact, for federal income tax purposes, it may be extremely beneficial to defer these taxes to the year in which the speculator converts the property to a higher value for its use. It does not keep anyone down on the farm when the right price is offered.

The 1973 General Assembly enacted legislation permitting preferential assessment of agricultural, forest and horticultural lands which reduces the property tax burden of the landowner. 1973 N.C. Sess. Laws c. 709. The law was substantially amended in 1975. 1975 N.C. Sess. Laws c. 746. The law is presently codified in G.S. 105-277.2 to -277.7. The three special classes of land are defined by form of ownership, use, income and acreage. *Id.* -277.3(a); -277.2 (1) (2) (3). An owner of agricultural, forest or horticultural lands which have a use value higher than one of these three which is a present use may apply to the county tax supervisor to have the land appraised at its present use value. *Id.* -277.4(a). The land must be maintained in a "sound management program" which is defined as "a program of production designed to obtain the greatest net return from land consistent with its conservation and long term improvement." *Id.* 277.2(6). This provision may disqualify a weekend or hobby farmer or speculator who does not maintain these lands in a "sound management program." Once property qualifies, dual records are maintained, one reflecting the true or fair market value of the land and the other reflecting the property's value in its present use. Each county must now have a present use value schedule which insures county wide uniformity of appraisal. *Id.* -277.6(c). Property tax is paid annually on the basis of present use value. "The difference between the taxes due on the present-use basis and the taxes which would have been payable in absence of this classification, together with any interest, penalties or costs

that accrue thereon, shall be a lien on the real property of the taxpayer as provided in G.S. 105-355(a)." *Id.* -277.4(c). The tax deferral continues as long as the property is maintained in a qualifying use or until it passes to ownership outside of those qualified for the present use assessment. Upon disqualification, all deferred taxes for the preceding three years become due together with statutory interest charges which accrue as of the date the taxes would have originally become due if not for the present use valuation. *Id.; see also* G.S. 105-360(a) (2) (3). A ten percent penalty is levied on the deferred tax and interest if the property owner does not notify the county tax supervisor of the disqualifications. *Id.* -277.5.

The General Assembly limited those owners who could seek present use valuation of their property. As originally written, the present use valuation was available only for "individually owned land" which was defined in former G.S. 105-277.2(4) to mean land "owned by a natural person or persons and not a corporation." The law as written in 1973 appears to be an attempt to deprive agribusiness and development corporations of the benefits of present use valuation. Proposals were made in the 1975 General Assembly to liberalize the present use valuation statutes. House Bill 852, Senate Bill 691. When the law was rewritten in 1975, only "individually owned" agricultural, forest or horticultural land could qualify. "Individually owned" was defined as follows.

"Individually owned" means owned by:

a.  A natural person or persons or

b.  A corporation having as its principal business one of the activities described in subdivisions (1), (2) and (3), above, the real owners of all of the shares of such corporation being natural persons actively engaged in such activities, or the spouse, siblings or parents of such persons.

G.S. 105-277.2(4). Certain corporations were thus permitted to qualify for present use valuation. These corporations can be characterized as "family corporations." *See* Institute of Gov-

ernment Property Tax Bulletin # 44 (20 August 1975). The amendment was enacted at a time when farm families were advised to incorporate for estate planning purposes. *See, e.g.,* Pinna, Wells & Harwood, Estate Planning for North Carolina Farm Families, Economic Information Report # 15, N.C.S.U., April 1974. A bill was introduced into the 1979 General Assembly which in effect would have allowed any corporate entity to obtain use value assessment for its agricultural, forest and horticultural lands. House Bill 856-Use Value Assessment for Farms. This bill was referred to the House Finance Committee. Consideration of this bill was postponed indefinitely on recommendation of the committee on 24 June 1980. 1980 N.C. House Journal, p. 186. The intent of the legislature seems quite clear. Its intent has been to be very restrictive with regard to what corporate entities can receive the benefit of present use valuation. The law is generally restrictive and answers much of the criticism leveled at such tax statutes in other jurisdictions.

[1]   Under G.S. 105-277.2(4), corporate holdings are excluded unless the corporation's principal business is agriculture, forestry or horticulture and its shareholders are natural persons who are actively engaged in agriculture, forestry and horticulture or the spouse, siblings or parents of such persons. The issue in this case is whether petitioner, a corporation, qualifies for present use valuation. The intent of the legislature in limiting qualification to "[a] corporation having as its *principal business* one of the activities described ... .", G.S. 105-277.2(4) (emphasis added), is at issue. To qualify, petitioner must have as its principal business agriculture, forestry or horticulture. The words "principal business" designate the operations of the qualifying corporation. These words have been interpreted by courts before but not in the context of this or a similar statute. *See, e.g., Hartford Steam Service Co. v. Sullivan,* 26 Conn. Sup. 277, 220 A. 2d 772 (1966); *Henderson v. Board of Examiners of Electrical Contractors,* 85 N.J. Super. 509, 205 A. 2d 333 (1964); *Norwood Shopping Center, Inc. v. MKR Corp.,* 135 So. 2d 448 (Fla. Dist. Ct. App. 1961); *Thomas v. Creager,* 107 S.W. 2d 705 (Tx. Civ. App. 1937). The narrow question of law in this appeal is by what standards *principal business* is to be determined. "Principal" is defined as "most important, consequential, or influential," Webster's Third New International Dictionary 1802

(1964), and as "[c]hief; leading; most important or considerable; primary; original." Black's Law Dictionary 1073 (5th ed. 1979). The dictionary definitions would seem to preclude either equality or plurality. There might possibly be a corporation qualifying in other respects which would have agriculture, forestry, or horticulture as a major activity with another minor activity such as sale of fertilizer, for example. The term does not, however, imply the equality or plurality which might exist in a large multifaceted conglomerate corporation. There must be criteria for determining what is or is not a principal business. Respondents advocate the sole test should be based on gross income. While gross income is undoubtedly a major criterion, we do not think it should be the sole determining factor. Another court has pointed out a simple illustration of why this is inappropriate.

> One may safely assume that revenue received by newspapers from the sale of advertising space far exceeds that derived from the sale of newspapers, and yet few people would suggest that the principal business of newspapers is commercial advertising.

*Hartford Steam Service Co. v. Sullivan*, 26 Conn. Sup. 277, 282-83, 220 A. 2d 772, 775 (1966). We think factors which should be looked at in determining the principal business of a corporation for present use valuation other than gross income are net income or profit and its source, annual receipts and disbursements, the purpose of the corporation as stated in its corporate charter and the actual corporate function in relation to its stated corporate purpose.

There is a constitutional requirement of uniformity in property taxation. N.C. Const. art. V, § 2(1) (2). The statute expressly indicates the constitutional base found in N.C. Const. Art. V, § 2(2) upon which special classification is made and permitted. G.S. 105-277.3(a). Petitioner has not on this appeal raised as an argument that it would be an impermissible discrimination to deny it present use valuation. *See* Hagman, *Open Space Planning and Property Taxation — Some Suggestions*, 1964 Wisconsin L. Rev. 628, 638-45 (1964); Annot. 98 A.L.R. 3d 916 (1980). Its only argument is that it, in fact, qualifies.

[2]　It was the conclusion of the Property Tax Commission that petitioner's principal business was not one of the activities which would qualify it for present use assessment. In all other respects, petitioner would qualify. It is a corporation owned by natural persons who are themselves actively engaged in farming. The gross income of petitioner clearly indicates petitioner's principal business is not agriculture or forestry. Since incorporation in 1967, petitioner has received in gross income from the sales of land a total of $4,444,600.00, while its farming operations have brought it only $31,694.42. Over 99% of the gross income of petitioner comes from a source other than one qualified for present use valuation. The record indicates that none of this income was disbursed in a way which would contribute to the farming operations. Rather, it went to retiring the mortgage indebtedness of $1,200,000.00 and to the income of the shareholders. The actual corporate function is to sell land. In every year of its existence, except the recession year of 1974, petitioner has made at least one sale of real estate. This evidence on the income and activity of the corporation is sufficient to support the decision of the Property Tax Commission.

We feel the purpose of the corporation as stated in the corporate charter could be a factor in determining its principal business. The document does not appear in the record of the case. It was a stipulated fact before the Property Tax Commission that petitioner was a North Carolina corporation chartered on 10 October 1967. The charter is a public document on file with the Secretary of State. We possibly could take judicial notice of this document of public record. *Commissioners v. Prudden,* 180 N.C. 496, 105 S.E. 7 (1920); *Staton v. Railroad,* 144 N.C. 135, 56 S.E. 794 (1907); 1 Stansbury's N.C. Evidence § 13 (Brandis rev. 1973); *see also Bland v. City of Wilmington,* 278 N.C. 657, 180 S.E. 2d 813 (1971). Although we do not base our holding on it, the charter, which was drafted before 1 October 1973 at a time when a statement of particular purpose or purposes of the corporation was required, *see* G.S. 55-7(3), 1973 N.C. Sess. Laws c. 469 s. 2, 47, is a particularly enlightening postscript to our decision. The charter states the following purposes for petitioner:

> To carry on and transact a general real estate business, including the right to take, acquire, buy, hold, maintain, rent, develop, sell, convey, mortgage, exchange, improve and otherwise deal in and dispose of real estate, chattels, real and personal property of every nature and description whatever, or any interest or right therein without limit as to amount; to convey, subdivide, plot, improve, and develop land and property for sale and otherwise; to do and perform all things needed and lawful for the development and improvement of the same for residence, trade or business; to erect and construct houses, buildings, or works of every description on any lands of the corporation, or upon other lands, and to rebuild, enlarge, alter, and improve existing houses, buildings or works; to convert and use for roads and other conveniences, and generally to deal with and improve the property of the company; and to undertake or direct the management and sale of the property, building, and land of the corporation, or any other lands.

Not once is an agricultural, horticultural or forestry activity mentioned.

Even without the corporate charter, the record supports the Property Tax Commission decision that petitioner is not a corporation which qualifies for present use valuation. The principal business of petitioner is not farming land but selling land. Such a principal business activity does not qualify for present use valuation. The decision of the trial court reversing the decision of the Property Tax Commission is

Reversed.

Chief Judge Morris and Judge Wells concur.