IN RE APPEAL OF CHURCH OF THE CREATOR

[102 N.C. App. 507 (1991)]

———————

IN THE MATTER OF: THE APPEAL OF THE CHURCH OF THE CREATOR FROM THE DENIAL OF ITS CLAIM FOR EXEMPTION BY THE MACON COUNTY. BOARD OF EQUALIZATION AND REVIEW FOR 1989

No. 9010PTC858

(Filed 16 April 1991)

**Taxation § 22 (NCI3d)— tax exempt status revoked—insufficient notice given taxpayer—improper procedure by tax assessor's office**

The procedures used by respondent county tax office in revoking petitioner's tax exempt status violated the North Carolina Machinery Act, N.C.G.S. § 105-271 *et seq.*, where respondent inspected petitioner's property, determined that it was no longer entitled to an exemption as property used for religious purposes, informed petitioner that it was removed from tax exempt status on 14 February 1989, and gave petitioner 30 days to correct its alleged deficiencies or appeal; however, pursuant to the Act, a county assessor has the power to challenge an exemption once granted by requiring the taxpayer to file a new application if the assessor perceives that one of the changes in the property listed in the statute has occurred, but the application for exemption must be made during the listing period, and the county therefore is required to notify the taxpayer before the listing period that such an application will be required for the coming tax year.

**IN RE APPEAL OF CHURCH OF THE CREATOR**

[102 N.C. App. 507 (1991)]

**Am Jur 2d, State and Local Taxation §§ 316, 381.**

Judge WYNN dissenting.

·APPEAL by respondent Macon County from the final decision of the Property Tax Commission entered 22 December 1989. Heard in the Court of Appeals 12 March 1991.

Petitioner Church of the Creator owns a building and certain property in Macon County. In 1984, the Macon County Tax Office granted a property tax exemption for the church building and land pursuant to N.C. Gen. Stat. § 105-278.3 (real and personal property used for religious purposes).

During the summer of 1988, Macon County's Tax Assessor went on inspection visits of additions to the residence of the church's "pontifex maximus," which adjoins the exempted property. He saw what appeared to him to be indications of lack of use of the church building and lack of maintenance on the land. By letter dated 14 February 1989, the assessor informed petitioner:

> It appears that your property does not meet the requirements any longer. After visiting your place several times doing [sic] this past year, it seems that the place is not being used for any type of activity. Also, your organization has never completed an application for tax exemption. You have also failed to submit a copy of your incorporation papers, by-laws, and charter.

> Our office has no choice but to take you out of tax exempt status. You have thirty days from the date of this letter to comply with the requirements or to appeal, or this notice is final.

The petitioner did not respond as requested, but did challenge the authority of the assessor to do what he had done, and pointed out that it had properly applied for and been granted an exemption. The revocation of exempt status was then finalized, and petitioner appealed to the Macon County Board of Equalization and Review, which affirmed this decision.

Petitioner then appealed to the North Carolina Property Tax Commission. The Commission concluded that the assessor had exceeded his authority and failed to employ a lawful procedure in revoking petitioner's tax exempt status. It further concluded that since the action was before the Macon County Board of Equalization

IN RE APPEAL OF CHURCH OF THE CREATOR

[102 N.C. App. 507 (1991)]

and Review solely as an appeal from this improper procedure, the Board lacked the authority to remove the previously granted exemption. Respondent appeals.

*William D. Harazin for petitioner-appellee.*

*McMurray, McMurray & Alexander, by John W. Alexander, for respondent-appellant.*

WELLS, Judge.

Our review is governed by N.C. Gen. Stat. § 105-345.2, which states that a final decision of the Property Tax Commission may be reversed or modified if appellant's substantial rights have been prejudiced because the Commission's findings, conclusions, inferences, or decisions are:

(1) In violation of constitutional provisions; or

(2) In excess of statutory authority or jurisdiction of the Commission; or

(3) Made upon unlawful proceedings; or

(4) Affected by other errors of law; or

(5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted; or

(6) Arbitrary or capricious.

We have reviewed the record and respondent's assignments of error and view the dispositive question presented by this appeal to be whether the Commission correctly held that the procedures used by respondent in revoking petitioner's tax exempt status violated the North Carolina Machinery Act (N.C. Gen. Stat. § 105-271 *et seq.*). We affirm.

Every owner of property seeking exemption from property taxes under provisions of the Act has the burden of establishing entitlement to such an exemption. N.C. Gen. Stat. § 105-282.1. The owner must file an application for exemption each year during the listing period. *Id.* This period begins on the first business day in January and extends through the end of the month, unless extended by the Board of County Commissioners. N.C. Gen. Stat. § 105-307. The Act excuses certain classes of taxpayers from this

annual filing requirement, creating, in effect, a continuing exemption. The provision relevant here is N.C. Gen. Stat. § 105-282.1(a)(3):

> After an owner of property entitled to exemption under
> ... 105-278.3 ... has applied for exemption and the exemption
> has been approved, such owner shall not be required to file
> applications in subsequent years except in the following
> circumstances:
>
> a. New or additional property is acquired or improvements
> are added or removed, necessitating a change in the valuation
> of the property, or
>
> b. There is a change in the use of the property or the qualifications or eligibility of the taxpayer necessitating a review of
> the exemption.

Respondent's assessor purported to remove petitioner from tax exempt status on 14 February 1989, and gave it 30 days to correct its alleged deficiencies or appeal. The Commission held that there is no authority in the Act for such an action. We agree. A county assessor has the power to challenge an exemption once granted by requiring the taxpayer to file a new application if he or she perceives that one of the changes in the property listed in the statute has occurred. Under the plain language of the statute, the application for exemption must be made during the listing period. The Commission reasoned that the county therefore is required to notify the taxpayer before the listing period that such an application will be required for the coming tax year. This did not take place in this case.

While the interpretation given a statute by the agency charged with its administration is not controlling, it is entitled to great consideration. *State Utilities Commission v. The Public Staff-North Carolina Utilities Commission*, 309 N.C. 195, 306 S.E.2d 435 (1984). In this case, the Commission has interpreted the statute in a reasonable way so as to protect the rights of counties to challenge continuing exemptions without doing damage to any of the Act's provisions. Respondent has failed to show that its substantial rights have been prejudiced in any of the ways set out in N.C. Gen. Stat. § 105-345.2. The decision of the Commission is therefore

IN RE APPEAL OF CHURCH OF THE CREATOR

[102 N.C. App. 507 (1991)]

Affirmed.

Judge GREENE concurs.

Judge WYNN dissents.

Judge WYNN dissenting.

The underlying concern raised by the case before us today is what constitutes a religion for purposes of tax-exempt status. While it is not the focal issue of the case, it compels my discussion. The record reveals that the Church of the Creator was granted corporate status in North Carolina upon submission of the following statement of purpose to the Secretary of State:

> A. The general purpose for which the corporation is organized is for the dissemination, teaching, and promotion of the religious beliefs of the incorporators and the members of the corporation. These beliefs are based on our observation of the Eternal Laws of Nature, on our conclusions drawn from the Lessons of History, and, are based on what we consider plain logic and common sense. It is our objective to bring benefits of our religious techings [sic] and beliefs to all the areas of the world, to establish our new religious creed in all perpetuity; to improve the quality of civilization and the betterment of mankind; to teach same to our individual members and to the community at large; to assist in charitable work of any nature deemed beneficial and to the best interest of our Church and to society as a whole, and to raise funds for carrying same into effect in any manner allowed by the constitution, by by laws of the Church and permitted under the laws of the State of North Carolina and the Constitution of the United States of America.

Carefully couched in this language is the hideous truth revealed by appellant that this "church" exists for the purpose of promoting the idea of "racial supremacy of the white race." This assertion was uncontested by the appellee. Further, this assertion is corroborated by a letter to the North Carolina Property Tax Division from the "church's" leader (the "Pontifex Maximus"), Ben Klassen, the closing of which states: "For a Whiter and Brighter World." Also, printed boldly at the bottom of the "church's" let-

IN RE APPEAL OF CHURCH OF THE CREATOR

[102 N.C. App. 507 (1991)]

terhead is the slogan: "Racial Loyalty — Racial Expansion — Racial Advancement."

Although it plainly should be a matter of concern as to how this organization achieved tax-exempt status in the first instance, we are not faced with that issue today. Rather, the issue with which we are concerned involves an interpretation of the Machinery Act. Because I believe the Property Tax Commission made an error of law in its interpretation of the Machinery Act, I must respectfully dissent.

The majority correctly states that the interpretation given a statute by the agency charged with its administration, while not controlling, is entitled to great consideration. Nonetheless, our Supreme Court has stated that

> it is ultimately the duty of the courts to construe administrative statutes and they may not defer that responsibility to the agency charged with administering those statutes. While the interpretation of the agency responsible for the administration may be helpful and entitled to great consideration when the Court is called upon to construe the statutes, that interpretation is not controlling. (citation omitted). *It is the Court and not the agency that is the final interpreter of legislation.* (citations omitted).

*State ex rel. Utilities Comm'n v. Public Staff*, 309 N.C. 195, 211-12, 306 S.E.2d 435, 444-45 (1983) (emphasis added).

The cardinal principle of statutory construction is that the intent of the legislature must control. *Id.* at 210, 306 S.E.2d at 443. In effect, the majority's decision allows a taxpayer which has been granted a "continuing" exemption to escape tax liability for any year in which the taxpayer, because of a change in the use or value of its property, has failed to reapply for exempt status during the listing period. I do not agree with the majority that N.C. Gen. Stat. § 105-282.1 plainly requires this result, nor do I believe that the legislature intended it.

North Carolina General Statutes section 105-282.1(a) (1989) provides that "an owner claiming exemption or exclusion [from property taxation] shall annually file an application for [the] exemption or exclusion during the listing period." A "qualified" exception to this annual filing requirement is contained in subsection (a)(3), which provides that,

IN RE APPEAL OF CHURCH OF THE CREATOR

[102 N.C. App. 507 (1991)]

After an owner of property entitled to exemption under . . . G.S. 105-278.3 [religious exemption] . . . has applied for such exemption and the exemption has been approved, such owner shall not be required to file applications in subsequent years *except* in the following circumstances:

a. New or additional property is acquired or improvements are added or removed, necessitating a change in the valuation of the property, or

b. There is a change in the use of the property or the qualifications or eligibility of the taxpayer necessitating a review of the exemption.

N.C. Gen. Stat. § 105-282.1(a)(3) (1989) (emphasis added).

By its terms, the above-quoted statute requires even "continuously" exempt taxpayers to file another application for exemption whenever one of the designated changes has occurred. This requirement, however, should not be read to suggest that a county's failure to require the taxpayer to file a new application *prior* to the listing period excuses the taxpayer from tax liability.

First, while the majority implies that it is the county assessor's responsibility "to require" the continuously exempt taxpayer to reapply for exemption, it should be noted that it is the *taxpayer's* responsibility to see that property is and remains properly listed. *See* N.C. Gen. Stat. § 105-308 (1989). If the taxpayer breaches this responsibility, the assessor then has a duty, as discussed below, "to discover" the property.

Second, N.C. Gen. Stat. § 105-282.1(a)(3) must not be read out of context. Individual portions of a statute must be interpreted in the context of the entire statutory scheme and accorded only that meaning which other modifying provisions and the clear intent and purpose of the Act will permit. *Overcash v. Statesville City Bd. of Educ.*, 83 N.C. App. 21, 24, 348 S.E.2d 524, 526 (1986). In the instant case, N.C. Gen. Stat. § 105-282.1(c) goes on to state that "[w]hen an owner of property that may be eligible for exemption . . . neither lists the property nor files an application for exemption . . . , the assessor . . . *shall* proceed to discover the property." In the case of continuously exempt taxpayers, I would interpret this provision as applying to both original and subsequent applications for exemption. Since logically it cannot be determined that a taxpayer has failed to list or seek the exemption of its

property until the listing period has expired, it seems clear that the assessor's duty "to discover" under subsection (c) can arise only *after* the listing period has expired. *See also* N.C. Gen. Stat. § 105-312(b) (1989) (making it the duty of the assessor to see that all property not properly listed *during the regular listing period* be listed, assessed and taxed).

Under N.C. Gen. Stat. § 105-312, "discovering property" is defined as the process by which an assessor lists and appraises property which has not been listed by the taxpayer *during* the regular listing period. *See* N.C. Gen. Stat. § 105-312(a)(3). Once an assessor has listed and appraised "discovered" property, he must notify the taxpayer that the listing and appraisal will become final unless the taxpayer files an exception thereto within 30 days.

In the instant case, the respondent's assessor notified the petitioner that its property did not appear to meet the requirements for exemption any longer and that the county intended to "take the petitioner out of exempt status." The assessor also notified the petitioner that the petitioner had 30 days within which to either supply certain requested information or to appeal. The petitioner responded by letter within the 30 days but did not supply the requested information. Instead, the petitioner responded defiantly, stating that "it was none of [respondent's] damn business ...."

Since the respondent's assessor followed the procedures outlined in N.C. Gen. Stat. § 105-282.1(c) and 312, I would reverse the Property Tax Commission's decision as being an error of law, to wit: an erroneous interpretation of the Machinery Act.