NORTH CAROLINA PROPERTY TAX COMMISSION FROM JACKSON COUNTY IN THE MATTER OF THE APPEAL OF: WHITESIDE ESTATES, INC.

No. COA99-334

(Filed 18 January 2000)

1. **Taxation— property—qualification as forestland—standing—aggrieved taxpayer**

    The Property Tax Commission did not err in denying Whiteside's motion to dismiss the initial appeal to the County Board by a private citizen, who owned a small interest in a piece of property in Jackson County, based on lack of standing to contest the preferential assessment of Whiteside's property as forestland under N.C.G.S. § 105-277.6 because: (1) the board of equalization and review shall hear any taxpayer who owns or controls property taxable in the county with respect to the listing or appraisal of his property or the property of others under N.C.G.S. § 105-322(g)(2) if the taxpayer is in some way aggrieved by that valuation; and (2) the private citizen in this case was adversely affected, or aggrieved, by the undervaluation of Whiteside's property since other property owners in Jackson County would bear a disproportionate share of the tax burden.

2. **Taxation— property—qualification as forestland—challenge of tax listing**

    A private citizen could contest the preferential tax assessment of Whiteside's property as forestland after the listing period

IN RE APPEAL OF WHITESIDE ESTATES, INC.

[136 N.C. App. 360 (2000)]

had expired because this case involves an appeal from a decision of the board of equalization and review instead of an exemption decision made by a county assessor, and Whiteside would not have benefitted from being notified to file a new exemption application since both the County Board and Property Tax Commission found that the property did not meet the requirements for present-use classification as forestland under N.C.G.S. § 105-277.6.

**3. Taxation— property—qualification as forestland—due process—notice**

The Property Tax Commission did not violate Whiteside's due process rights by failing to notify it of the initial proceeding before the Jackson County Board when a private citizen appeared in support of his challenge to the present-use classification of the Whiteside property as forestland, and by failing to make an "intelligible transcript" of the proceeding, because: (1) N.C.G.S. § 105-322(d) only requires the County Board to keep "accurate minutes of the actions"; (2) the County Board properly followed statutory procedures by notifying Whiteside of its proposed action and giving Whiteside the opportunity to have a full hearing before the County Board; (3) the hearing before the County Board was a de novo hearing, which satisfied Whiteside's due process rights to notice and hearing, N.C.G.S. § 105-322(g)(2); and (4) Whiteside had the right to subpoena the private citizen to the hearing before the County Board and cross-examine him under N.C.G.S. § 105-322(g)(2)(c).

**4. Taxation— property—qualification as forestland—findings of fact—sufficiency**

The Property Tax Commission did not err in finding as fact that Whiteside was not actively engaged in the commercial growing of trees under a sound management program pursuant to N.C.G.S. § 105-277.2(2), which would have qualified its property for taxation at present-use value, because this finding is supported by competent, material, and substantial evidence of record, and it is the Commission's duty to determine the weight and sufficiency of the evidence and the credibility of the witnesses, to draw inferences from the facts, and to appraise conflicting and circumstantial evidence.

IN RE APPEAL OF WHITESIDE ESTATES, INC.

[136 N.C. App. 360 (2000)]

Appeal by Taxpayer from Final Decision of the North Carolina Property Tax Commission on 20 November 1998. Heard in the Court of Appeals 9 December 1999.

*Jones, Key, Melvin & Patton, P.A., by Richard Melvin, for Taxpayer appellant.*

*Parker, Poe, Adams & Bernstein, L.L.P., by Charles C. Meeker, for Jackson County appellee.*

HORTON, Judge.

Whiteside Estates, Inc. (Whiteside), is a North Carolina family corporation which owns a 227-acre tract of land near Cashiers in Jackson County, North Carolina. The primary purpose of the corporation, as described in its charter, is the purchase and sale of real estate. All of the stock in Whiteside is owned by the Young family. O.E. Young, Jr., and his wife, Mary Lu Young (the senior Youngs), are the majority stockholders in Whiteside, holding 51% of its stock. The senior Youngs are residents of Florida, who usually spend six months of the year at their home in Jackson County. During their yearly stay in North Carolina, they participate in the operation of a real estate business in Highlands. The senior Youngs also own an adjoining tract of about 250 acres. That adjoining tract is the subject of a separate appeal from the Property Tax Commission, which appeal was decided by a separate opinion filed this date.

The minority interest in Whiteside, a total of 49% of the outstanding stock, is held by the five children of the senior Youngs. Four of the Young children live outside North Carolina, but one son, John David Young, works in Highlands and lives in a home on the property.

John David Young is generally responsible for maintaining the Young property in Jackson County. A 15-acre lake is located near the center of the property. Whiteside recently reconstructed the dam which impounds the lake at a cost of $110,000.00. The water from the lake is not used to irrigate the trees which grow on the property. The home in which the senior Youngs live when they are in North Carolina has a view of the lake. There are two subdivisions with a total of 20 home sites located on the property. During 1994 and 1995, following widespread destruction to standing trees on the property caused by Hurricane Opal, Whiteside contracted with a logger from South Carolina to cut and remove timber from about 100 acres of its tract,

IN RE APPEAL OF WHITESIDE ESTATES, INC.

[136 N.C. App. 360 (2000)]

receiving some $14,000.00 in revenues. In 1996, Whiteside received income from water fees, road fees and a cable agreement. It incurred expenses related to the operation and management of the two subdivisions on the property.

Before 1997, the subject property was assessed for tax purposes in the amount of $102,800.00, under present-use value status, forestry classification. In April 1997, C.E. Russell, a Jackson County taxpayer, filed an appeal with the Jackson County Board of Equalization and Review (County Board) challenging the present-use classification of the property owned by Whiteside. As a result, the County Board determined that Whiteside's property did not meet the present-use value requirements for 1997, and notified Whiteside of its right to a hearing. The County Board conducted a hearing at the request of Whiteside, but determined that the Whiteside property should be assessed for tax purposes at its fair market value of $719,400.00. Whiteside then appealed to the Property Tax Commission, which heard its appeal in Asheville on 25 August 1998. Whiteside moved to dismiss Mr. Russell's initial appeal to the County Board, contending that Russell had no standing to challenge the listing, assessment or appraisal of the Whiteside property, and further contending that its right to due process was violated by the procedure. The Property Tax Commission denied the motion.

After considering the evidence presented by Whiteside, the Property Tax Commission granted the motion of Jackson County to dismiss Whiteside's appeal, on the grounds that Whiteside had not carried its burden of showing that the land was actively engaged in the commercial growing of trees. By its Final Order, the Property Tax Commission affirmed the County Board's decision to deny present-use value classification to the Whiteside property, and to assign a market value of $719,400.00 to the property. Whiteside appealed.

Whiteside contends the Commission erred (I) in denying its motion to dismiss the initial appeal to the County Board filed by Russell, and (II) in concluding that Whiteside failed to show that the property in question is forestland which was part of a forest unit actively engaged in the commercial growing of trees under a sound management program. Jackson County cross-assigns error to the failure of the Property Tax Commission to find and conclude that Whiteside failed to show that its owners are farmers actively engaged in the principal business of tree farming.

**IN RE APPEAL OF WHITESIDE ESTATES, INC.**

[136 N.C. App. 360 (2000)]

I.

[1] In support of its motion to dismiss, Whiteside contends that C.E. Russell, a private citizen, had no standing to challenge the assessment on Whiteside's property unless Russell shows that he was "aggrieved" in some respect by the valuation of Whiteside's property. It was agreed by the parties that Russell owned a small interest in a piece of property in Jackson County located some miles away from the Whiteside property, that the property in which Russell had an interest was not in the forest use classification, and that Russell's interest was as a general taxpayer in Jackson County.

In 1973, North Carolina joined a majority of our sister states by enacting legislation which permitted preferential assessment of property used for agricultural, forest and horticultural purposes. The legislation, which was substantially amended in 1975, is found in N.C. Gen. Stat. §§ 105-277.2 through -277.7 (1999). *See W.R. Company v. Property Tax Comm.*, 48 N.C. App. 245, 257, 269 S.E.2d 636, 643 (1980), *disc. review denied*, 301 N.C. 727, 276 S.E.2d 287 (1981). The owner of agricultural, forest or horticultural lands may apply to have the lands appraised at their present-use value, a value lower than the market value of the property. In order to qualify for such preferential treatment, however, the lands must be maintained in a "sound management program" which is defined as "[a] program of production designed to obtain the greatest net return from the land consistent with its conservation and long-term improvement." N.C. Gen. Stat. § 105-277.2(6). "This provision may disqualify a weekend or hobby farmer or speculator who does not maintain these lands in a 'sound management program.'" *W.R. Company*, 48 N.C. App. at 257, 269 S.E.2d at 643. Here, Whiteside submitted a Forest Management Plan in 1976. The plan was approved by Jackson County, and the Whiteside property was given a present-use classification as forestland. It appears from the record that the forestland classification was not reviewed until 1997, when Russell complained to the County Board about the present-use classification of Whiteside's land. Whiteside argues that Russell had no standing to take such action. We disagree.

N.C. Gen. Stat. § 105-322(g)(2) provides in pertinent part that "[o]n request, the board of equalization and review shall hear *any taxpayer* who owns or controls property taxable in the county with respect to the listing or appraisal of his property *or the property of others.*" *Id.* (1999) (emphasis added). In *In re King*, 281 N.C. 533, 189

S.E.2d 158 (1972), urban property owners in Nash County questioned the assessment of farm land within the County, contending that the farm property was undervalued for tax purposes. The State Board of Assessment, predecessor of the Property Tax Commission, found that the rural property was undervalued for tax purposes and ordered a revaluation. The superior court affirmed the decision of the Board of Assessment. Our Supreme Court affirmed the decision, pointing out that property is required to be valued "at its true value" for tax purposes. The Supreme Court explained that

> [t]he purpose of the statutory requirement that all property be appraised at its true value in money is to assure, as far as practicable, a distribution of the burden of taxation in proportion to the true values of the respective taxpayers' property holdings, whether they be rural or urban. It is the duty of the County Board of Equalization and Review, when so requested, to hear any taxpayer owning taxable property in the county with respect to the valuation of his property or of the property of others and to eliminate unlawful discriminations in the valuations of all properties in the county. G.S. 105-327(g). If such taxpayer is aggrieved by the order of the County Board of Equalization and Review, he may appeal to the State Board of Assessment. G.S. 105-329.

*Id.* at 539, 189 S.E.2d at 161.

In discussing *King* and related cases, our Supreme Court held in *Brock v. Property Tax Comm.*, 290 N.C. 731, 228 S.E.2d 254 (1976), that, "[w]hen examined with respect to the statutes in effect at the time these cases were decided and with respect to the facts of each case, it is clear that the Court permits a property owner to contest the valuation on the 'property of others' only where he is in some way aggrieved by that valuation." *Brock*, 290 N.C. at 740, 228 S.E.2d at 260. Although Whiteside relies heavily on *Brock* in support of its position that Russell had no standing to question the assessed value of Whiteside's property, *Brock* is clearly distinguishable from the case before us. *Brock* involved a number of taxpayers who sought to challenge the valuation of *all* farm property in Jones County, contending that all farm property in the County was valued in excess of its fair market value by at least 25 percent. The Jones County Board of Equalization and Review denied the request, and Brock and 10 other taxpayers appealed to the Property Tax Commission. Thereafter, Brock forwarded the names of 99 other Jones County taxpayers to the Property Tax Commission, asking that they be listed as appel-

IN RE APPEAL OF WHITESIDE ESTATES, INC.

[136 N.C. App. 360 (2000)]

lants. The Property Tax Commission dismissed the appeal as to the 99 additional taxpayers, stating that the 99 persons did not even appeal to the Jones County Board and had no standing to appeal to the Property Tax Commission.

Our Supreme Court agreed that the 99 taxpayers listed by Mr. Brock in a letter to the Property Tax Commission were not entitled to join the appeal "en route," so that the appeal was properly dismissed as to them. In language pertinent to the case before us, the Supreme Court held that a property owner who contests the valuation on the property of others must be "aggrieved" in some way by that valuation. *Id.* Since there was no such showing in *Brock*, the purported appeal by the 99 additional Jones County taxpayers was properly dismissed. In *Brock*, the original plaintiffs were not aggrieved by the fact that the property of other Jones County taxpayers was <u>over</u>valued for tax purposes. In the case before us, however, Russell complained that the property of Whiteside was <u>under</u>valued, with the result that other property owners in Jackson County would bear a disproportionate share of the tax burden. Thus, Russell was adversely affected, or aggrieved, by the alleged undervaluation of Whiteside's property and had standing to appeal to the Jackson County Board for a revaluation of Whiteside's property.

[2] Whiteside also contends that a tax listing cannot be challenged after the listing period has expired, and cites the case of *In Re Appeal of Church of the Creator*, 102 N.C. App. 507, 402 S.E.2d 874 (1991) in support of his contention. Our decision in *Church of the Creator* does not support Whiteside's argument. In *Church of the Creator*, we held that the county assessor, in revoking the tax-exempt status of a property owner, violated the procedures set forth in the North Carolina Machinery Act. The assessor was entitled to challenge the tax listing, but could do so only by requiring the taxpayer to refile an application for exemption during the listing period.

Respondent's assessor purported to remove petitioner from tax exempt status on 14 February 1989, and gave it 30 days to correct its alleged deficiencies or appeal. The Commission held that there is no authority in the Act for such an action. We agree. A county assessor has the power to challenge an exemption once granted by requiring the taxpayer to file a new application if he or she perceives that one of the changes in the property listed in the statute has occurred. Under the plain language of the statute, the application for exemption must be made during the listing period. The Commission reasoned that the county therefore is required

**IN RE APPEAL OF WHITESIDE ESTATES, INC.**

[136 N.C. App. 360 (2000)]

to notify the taxpayer before the listing period that such an application will be required for the coming tax year. This did not take place in this case.

*Id.* at 510, 402 S.E.2d at 876. The case before us involves an appeal from a decision of the Jackson County Board of Equalization and Review, not an exemption decision made by a county assessor as in *Church of the Creator.* Further, Whiteside would not have benefitted from being notified to file a new exemption application, since both the County Board and Property Tax Commission found that it did not meet the requirements for present-use classification as forestland.

[3] Whiteside further contends that it was denied due process because it was not notified of the initial proceeding before the Jackson County Board, when Russell appeared in support of his challenge to the present-use classification of the Whiteside property. Whiteside also argues that there was no "intelligible transcript" made of the initial proceeding before the County Board. The applicable statutes only require, however, that "accurate minutes of the actions" of the County Board be kept. N.C. Gen. Stat. § 105-322(d). The Jackson County Board also properly followed statutory procedures by notifying Whiteside of its proposed action and giving Whiteside the opportunity to have a full hearing before the County Board. The hearing before the County Board was a *de novo* hearing, which satisfied Whiteside's due process rights to notice and a hearing. N.C. Gen. Stat. § 105-322(g)(2). Although Whiteside complains that it was not allowed to confront Russell, Whiteside had the right to subpoena Russell to the hearing before the County Board and cross-examine him. *See* N.C. Gen. Stat. § 105-322(g)(2)(c). The provisions for hearings and appeals set out in our Machinery Act do not violate established principles of due process. We are sensitive to Whiteside's argument that those statutory provisions allowed the County Board to make its initial decision at a hearing of which Whiteside was given no notice. Whether that procedure should be amended, however, is a matter for legislative consideration.

## II.

[4] Whiteside next contends the Commission erred in finding as fact that it was not actively engaged in the commercial growing of trees under a sound management program pursuant to N.C. Gen. Stat. § 105-277.2(2). North Carolina law provides that forestland is eligible for taxation at present-use value provided certain conditions

are met. *See* N.C. Gen. Stat. §§ 105-277.3(a)(3) and -277.4(a). Forestland is defined as "[l]and that is a part of a forest unit that is actively engaged in the commercial growing of trees under a sound management program." N.C. Gen. Stat. § 105-277.2(2). The statute defines "sound management program" as a "program of production designed to obtain the greatest net return from the land consistent with its conservation and long-term improvement." N.C. Gen. Stat. § 105-277.2(6).

After hearing all the evidence on those issues, the Commission found, among other things, that

5. The subject property is not actively engaged in the commercial growing of trees under a sound management program. Mr. J. David Young, witness for the Taxpayer, who lives at one of the subdivisions located at the subject property, testified that he manages the property for the family corporation. He stated that there are two subdivisions located on the subject property one of which consists of eight home sites, and the other consists of twelve sites. Considering his testimony, he manages the property by overseeing the maintenance of the subdivisions as well as negotiating the sales of the subdivision lots. He testified that the last subdivision lot sale occurred in 1983.

6. The subject property is not part of a forest unit that is actively engaged in the commercial production of trees under a sound management plan. Further testimony by Mr. J. David Young, established that only one sale of timber had occurred on the subject property when in 1995 a South Carolina logger timbered approximately 100 acres and paid $14,000.00 for the timber. He further testified that some thinning work had been done on the property by his brother and a neighbor, named Mr. Woods. The only other witness for the Taxpayer was Mr. O.E. Young, Jr. He testified that his mother bought the subject property in 1940 or 1941, and that he and his spouse acquired a one-half undivided interest in the property in 1953. He also testified that in the 1920s the quality timber on the subject property was cut and the timber that remained was pulpwood only which had no real value. In Mr. Young's opinion, it was not economically feasible to harvest the timber on the subject property.

In its brief, Whiteside recites evidence it presented to the Commission in support of its contention that it was actively engaged in the commercial growing of trees under a sound management pro-

**IN RE APPEAL OF WHITESIDE ESTATES, INC.**

[136 N.C. App. 360 (2000)]

gram. However, "[i]t is the Commission's duty 'to determine the weight and sufficiency of the evidence and the credibility of the witnesses, to draw inferences from the facts, and to appraise conflicting and circumstantial evidence.' " *In Re the Appeal of Interstate Income Fund I*, 126 N.C. App. 162, 164, 484 S.E.2d 450, 451 (1997) (quoting *In re McElwee*, 304 N.C. 68, 87, 283 S.E.2d 115, 126-27 (1981)).

In *Church*, we explained judicial review of a decision of the Property Tax Commission sitting as the State Board of Equalization and Review:

Our review is governed by N.C. Gen. Stat. § 105-345.2, which states that a final decision of the Property Tax Commission may be reversed or modified if appellant's substantial rights have been prejudiced because the Commission's findings, conclusions, inferences, or decisions are:

(1) In violation of constitutional provisions; or

(2) In excess of statutory authority or jurisdiction of the Commission; or

(3) Made upon unlawful proceedings; or

(4) Affected by other errors of law; or

*(5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted;* or

(6) Arbitrary or capricious.

*Church*, 102 N.C. App. at 509, 402 S.E.2d at 875 (emphasis added). We have carefully examined the record, and find that the Commission's findings of fact are supported by competent, material, and substantial evidence of record. We are bound by those findings, which in turn support the conclusion of law that the property of Whiteside was not actively engaged in the commercial growing of trees under a sound management program.

In light of our decision, we need not reach the cross-assignment of error raised by Jackson County.

Affirmed.

Judges McGEE and EDMUNDS concur.