IN THE MATTER OF: THE APPEAL OF BRIARFIELD FARMS FROM THE DECISION OF THE ALAMANCE COUNTY BOARD OF EQUALIZATION AND REVIEW

No. COA00-1408

(Filed 20 November 2001)

## 1. Taxation— ad valorem—burden before Commission—role of Court of Appeals

The burden is on the taxpayer to prove entitlement to an exemption in cases before the Tax Commission. The Court of Appeals must decide all relevant questions of law de novo, and review the findings, conclusions, and decision to determine if they are affected by error or are unsupported by competent, material and substantial evidence in view of the entire record.

## 2. Taxation— ad valorem—farm use exemption—activity requirement

The Tax Commission had before it substantial evidence to conclude that petitioner met the activity requirement for retaining its farm-use ad valorem tax exemption for 1998 where the farm was in transition from a dairy and breeding operation to the cultivation of ground crops and the County argued that the only crops grown in 1998 were planted to reseed the farm rather than for commercial sale or consisted of reseeded hay, which was not planted. The hay was an agricultural product ultimately marketed for profit while the other crops were part of the processes and steps necessary and incident to the completion of products from the farm. The Commission had before it substantial evidence that petitioners were engaged in agriculture as that term has previously been defined; the fact that there was evidence to the contrary is not a sufficient ground to overturn the Tax Commission's determination.

## 3. Taxation— ad valorem—farm use exemption—acreage and income requirements

The Tax Commission had substantial evidence before it to conclude that petitioner met the acreage and income requirements to retain its farm-use ad valorem tax exemption under N.C.G.S. § 105-277.3 where it clearly met the acreage requirement and met the $1,000 minimum in 1998 with $1,100 from the sale of hay. The County's contention that each ten-acre tract in active production must produce $1,000 (for a minimum of $19,500 for

**IN RE APPEAL OF BRIARFIELD FARMS**

[147 N.C. App. 208 (2001)]

petitioner) is not supported by case law and would render many farms unable to meet the requirement. This does not appear to be a result intended by the Legislature.

**4. Taxation— Tax Commission—framing of issue—de novo review**

The Tax Commission did not err in its framing of an ad valorem tax issue where the issue before the County Board of Equilization and Review was whether petitioner could continue its special use as a dairy farm and the Tax Commission stated the issue as whether the taxpayer's land was part of a farm unit actively engaged in the commercial production of or the growing of crops, plants, or animals under a sound management program. The County is barred from discussing information not in the record or transcript, the Tax Commission's hearing is de novo and not limited by the decision of a county board of equalization and review, the County failed to timely object before the Tax Commission, and it was the County which framed the issue by calling the exemption a dairy farm special use.

**5. Taxation— ad valorem—farm use exemption—change in operation—notice to county**

Petitioner's failure to notify the County of the transition from dairy and breeding operations to the cultivation of ground crops did not bar its eligibility for the farm use exemption. Both the dairy and breeding operations and its cultivation of ground crops qualified petitioner as an agricultural land farm-use property; even so, the only penalty under N.C.G.S. § 105-277.5 for failure to notify is monetary and does not strip the landowner of his right to the classification.

**6. Taxation— Tax Commission proceeding—County's failure to present evidence**

The Tax Commission did not improperly base its decision on the fact that the County presented no evidence where there was no evidence that the Tax Commission based its decision on that fact. The Commission based its decision on the evidence presented and did not place an improper burden on the County.

Appeal by respondent from final decision entered 29 August 2000 by the North Carolina Property Tax Commission. Heard in the Court of Appeals 19 September 2001.

**IN RE APPEAL OF BRIARFIELD FARMS**

[147 N.C. App. 208 (2001)]

*David I. Smith for Alamance County respondent appellant.*

*Tuggle, Duggins & Meschan, P.A., by William G. Burgin, III and Amanda L. Fields, for taxpayer appellee.*

McCULLOUGH, Judge.

Briarfield Farms (Briarfield) is a 390-acre tract of land in Alamance County, North Carolina, which has been owned by the Needham family for several generations. The Needhams used Briarfield as a dairy farm for almost fifty years; during that time, the farm also produced a small amount of wheat, corn and hay. Briarfield was managed for many years by Mrs. Ophelia Needham, while her son Bill provided the major labor. The Needhams filed the appropriate paperwork with the Alamance County Board of Assessors (Assessors) and successfully had their farm classified as farm-use property for *ad valorem* tax purposes, pursuant to N.C. Gen. Stat. § 105-277.3(a)(1) (1999).

At its height, Briarfield had between 200 and 225 cows on 390 acres of land. In 1991, Mrs. Needham died, and her son Bill took over the farm's operations. The deterioration of market conditions caused the Needham family to scale down their dairy operation in the early 1990s. The farm was reduced to about 100 cows, and the farm transitioned from a dairy operation to a breeding operation in which the heifers were sold to other dairy farms or to beef farms. Bill Needham tried this format until 1998, when he decided to bring in his nephew, Shawn Needham, to facilitate Briarfield's changeover from dairy and breeding operations to cultivation of ground crops. By spring 1998, Bill Needham had sold all the remaining cows, and he and his nephew Shawn began actively implementing a plan to grow crops on the land. Shawn Needham took over Briarfield's management in the summer of 1998 and worked thirty to forty hours per week. During 1998, he cleared approximately 220 acres of land and cultivated hay, wheat, and soybeans. He also harvested several hundred bales of hay and sold them commercially for over $1,000.00.

In 1998, the Assessors audited Briarfield for the first time since the farm had ceased its dairy operation. The Assessors determined that Briarfield was no longer a farm-use property and informed the Needhams of their conclusion in writing. By giving the Needhams notice, the Assessors gave the Needhams an opportunity to disprove their determination that Briarfield no longer met the statutory farm-

IN RE APPEAL OF BRIARFIELD FARMS

[147 N.C. App. 208 (2001)]

use status. When the Needhams failed to respond within the allotted time, the Assessors revoked Briarfield's farm-use status. Alamance County (the County) then billed Briarfield at the 1998 market value *ad valorem* rates and imposed the deferred tax differential between the use value and the market value.

On 13 January 1999, the Needhams appealed to the Alamance County Board of Equalization and Review, which upheld the Assessors' determination that Briarfield did not meet the requirements of farm-use status. On 1 July 1999, the Needhams requested a hearing before the North Carolina Property Tax Commission (Tax Commission), sitting as the State Board of Equalization and Review. The Tax Commission denied the County's motion to dismiss, and granted the Needhams' request for a hearing; the hearing took place on 29 and 30 June 2000.

At the Tax Commission hearing, Briarfield called two witnesses: Bill and Shawn Needham. They presented evidence, including an aerial photograph of the acreage, tax returns for 1995, 1996, and 1997, a letter from the Alamance County Assessor notifying the owners that Briarfield's farm-use status was no longer in effect, some relevant statutory provisions, and a Court of Appeals case for the Tax Commission's consideration. The owners then rested.

Alamance County moved to dismiss the Needhams' appeal, arguing that the Needhams failed to provide sufficient evidence to overcome the Assessors' determination that the farm no longer qualified for farm-use treatment. This motion was denied, and the County rested without presenting any evidence. The County renewed its motion to dismiss, which was again denied. The Tax Commission deliberated and voted, 3-2, to reverse the Alamance County Board of Equalization and Review, thereby conferring upon Briarfield its former farm-use status for tax year 1998. The County appealed.

On appeal, the County argues that the Tax Commission erred by (I) finding that Briarfield qualified as agricultural land within the meaning of N.C. Gen. Stat. § 105-277.2(1) for the tax year 1998; (II) changing the way the issue of Briarfield's status determination was framed; (III) determining that Briarfield's failure to notify the County of its status change did not deprive it of farm-use status; and (IV) basing its final decision on the fact that the County did not put on evidence. For the reasons set forth, we disagree with the County's arguments and affirm the decision of the Tax Commission.

[1] In cases before the Tax Commission, "[a]s a general rule the burden is on the taxpayer to prove entitlement to an exemption." *In re Appeal of Atlantic Coast Conference*, 112 N.C. App. 1, 4, 434 S.E.2d 865, 867 (1993), *aff'd*, 336 N.C. 69, 441 S.E.2d 550 (1994). When cases are before this Court, we "must decide all relevant questions of law *de novo*, and review the findings, conclusions and decision to determine if they are affected by error or are unsupported 'by competent, material and substantial evidence in view of the entire record.' " *In re Appeal of Parsons*, 123 N.C. App. 32, 38-39, 472 S.E.2d 182, 187 (1996) (quoting *In re Appeal of Perry-Griffin Foundation*, 108 N.C. App. 383, 393, 424 S.E.2d 212, 218, *disc. review denied*, 333 N.C. 538, 429 S.E.2d 561 (1993) (quoting N.C. Gen. Stat. § 105-345.2)). *See also In re Appeal of Southeastern Bapt. Theol. Seminary, Inc.*, 135 N.C. App. 247, 254, 520 S.E.2d 302, 306-07 (1999); *MAO/Pines Assoc. v. New Hanover County Bd. of Equalization*, 116 N.C. App. 551, 556, 449 S.E.2d 196, 199-200 (1994); and N.C. Gen. Stat. § 105-345.2 (1999). Substantial evidence is defined as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Thompson v. Board of Education*, 292 N.C. 406, 414, 233 S.E.2d 538, 544 (1977) (quoting *Comr. of Insurance v. Fire Insurance Rating Bureau*, 292 N.C. 70, 80, 231 S.E.2d 882, 888 (1977)). With this standard of review in mind, we turn to the County's arguments.

### I. Briarfield's Qualification as "Agricultural Land" under N.C. Gen. Stat. § 105-277.2(1) (1999)

[2] In 1973, North Carolina enacted legislation "which permitted preferential assessment of property used for agricultural, forest and horticultural purposes." *In re Appeal of Whiteside Estates, Inc.*, 136 N.C. App. 360, 364, 525 S.E.2d 196, 198, *cert. denied*, 351 N.C. 473, 543 S.E.2d 511 (2000). This legislation is found in N.C. Gen. Stat. §§ 105-277.2 through -277.7 (1999). *See W.R. Company v. Property Tax Comm.*, 48 N.C. App. 245, 257, 269 S.E.2d 636, 643 (1980), *disc. review denied*, 301 N.C. 727, 276 S.E.2d 287 (1981). Under these statutory provisions, "[t]he owner of agricultural, forest or horticultural lands may apply to have the lands appraised at their present-use value, a value lower than the market value of the property." *Whiteside*, 136 N.C. App. at 364, 525 S.E.2d at 198.

The first step in such an appraisal is to determine how the land in question should be treated. N.C. Gen. Stat. § 105-277.2(1) sets forth definitions of land for taxation purposes. Agricultural land is defined as follows:

**IN RE APPEAL OF BRIARFIELD FARMS**

[147 N.C. App. 208 (2001)]

(1) Agricultural land.—Land that is a part of a farm unit that is actively engaged in the commercial production or growing of crops, plants, or animals under a sound management program. Agricultural land includes woodland and wasteland that is a part of the farm unit, but the woodland and wasteland included in the unit shall be appraised under the use-value schedules as woodland or wasteland. A farm unit may consist of more than one tract of agricultural land, but at least one of the tracts must meet the requirements in G.S. 105-277.3(a)(1), and each tract must be under a sound management program.

N.C. Gen. Stat. § 105-277.2(1) (1999).

N.C. Gen. Stat. § 105-277.3(a)(1) states that certain types of property are "special classes of property" subject to special taxation. Agricultural land is classified as follows:

(1) Agricultural land.—Individually owned agricultural land consisting of one or more tracts, one of which consists of at least 10 acres that are in actual production and that, for the three years preceding January 1 of the year for which the benefit of this section is claimed, have produced an average gross income of at least one thousand dollars ($1,000). Gross income includes income from the sale of the agricultural products produced from the land and any payments received under a governmental soil conservation or land retirement program. Land in actual production includes land under improvements used in the commercial production or growing of crops, plants, or animals.

To qualify for agricultural land present-use (in this case, farm-use) value classification, the Needhams, as taxpayers, had to show that (1) Briarfield was actively engaged in the commercial production or growing of crops, plants or animals during tax year 1998; (2) Briarfield was operated under a sound management program during tax year 1998; and (3) the land comprising Briarfield Farms met the applicable size and income requirements during the three years preceding tax year 1998. *See* N.C. Gen. Stat. § 105-277.2(1) and N.C. Gen. Stat. § 105-277.3(a)(1).

## (1) Activity

The taxpayers contend that Briarfield met its burden under N.C. Gen. Stat. § 105-277.2 for the tax year 1998 because, though it was in

transition from dairy and breeding operations to the cultivation of ground crops, there was substantial evidence that it was actively engaged in commercial production or growing of crops, plants or animals. The taxpayers correctly point out that

> [t]raditionally, agriculture has been broadly defined as "the science or art of cultivating the soil and its fruits, especially in large areas or fields, and the rearing, feeding, and management of livestock thereon, including every process and step necessary and incident to the completion of products therefrom for consumption or market and the *incidental* turning of them to account." This traditional definition has been extended to encompass the storage and marketing of agricultural products.

*Development Associates v. Board of Adjustment*, 48 N.C. App. 541, 546-47, 269 S.E.2d 700, 703 (1980), *disc. review denied*, 301 N.C. 719, 274 S.E.2d 227 (1981) (citations omitted).

Both Bill and Shawn Needham testified that during 1998, Briarfield produced hay, wheat and soybeans. Though Shawn Needham sold only part of the hay in 1998, the sale netted about $1,100.00. Shawn Needham also stored the farm's 1998 wheat crop and sold it in 1999 in order to hold the crop until market prices were more favorable.

The County, on the other hand, argues that Briarfield did not meet its statutory burden because by 1998 nearly four years had elapsed since Briarfield had operated as a dairy farm, and Briarfield's 1998 activities did not rise to a level which warranted a tax exemption. The County argues that Briarfield's 1998 income was strictly from the sale of hay, and the hay was essentially baled grass, not a commercial crop. To bolster its argument, the County pointed to Shawn Needham's testimony that the hay was not "planted"; rather, it was "a reproductive thing" that only required reseeding to be produced. The County further noted that Briarfield's other crops were also planted to "reseed" the farm, rather than for commercial sale.

Though the County's arguments are based in fact, they are not sufficient to overturn the Tax Commission's conclusion that Briarfield was entitled to a farm-use tax exemption for the tax year 1998. The Tax Commission had substantial evidence that the Needhams were engaged in agriculture, as that term has previously been defined by our decision in *Development Associates*. The hay was an agricultural product that was ultimately marketed for profit,

and the other crops were part of the processes and steps "necessary and incident to the completion of products" from the farm.

Keeping in mind that our review of the Tax Commission's decision is limited to determining whether it was supported by substantial evidence, we conclude that the Tax Commission did not err in concluding that Briarfield was engaged in the commercial production or growing of crops, plants or animals during the tax year 1998. The fact that there is evidence to the contrary is not a sufficient ground to overturn the Tax Commission's determination; thus, we will not do so.

## (2) Sound Management

[3] A sound management program is defined by statute as

[a] program of production designed to obtain the greatest net return from the land consistent with its conservation and long-term improvement.

N.C. Gen. Stat. § 105-277.2(6).

Briarfield contends it was under sound management by Shawn Needham in 1998 because he made a smooth transition from dairy and breeding operations to the cultivation of ground crops. Additionally, Shawn Needham's testimony indicates that he strategically left some of the farm's fields fallow to retain the soil's integrity, retained some of the 1998 wheat crop for sale at a better price in 1999, and did other things to keep Briarfield viable during its transition period. There is also evidence in the record that Shawn Needham did not bear the burden of managing Briarfield alone during the tax year 1998. Shawn's uncle Bill, who had extensive farming experience, actively managed Briarfield from January to July 1998. Shawn Needham had previous experience working at Briarfield for his grandparents years earlier. He testified that he routinely sought advice from his uncle and local farmers about which crops to plant. Finally, Shawn Needham testified that he worked at Briarfield about forty hours per week and had help from his wife and some friends who volunteered to assist him with the daily operation of the farm. Based on this evidence, it is clear that Shawn Needham was not a "weekend or hobby farmer or speculator who does not maintain [the] lands in a 'sound management program.'" *W.R. Company*, 48 N.C. App. at 257, 269 S.E.2d at 643. There was ample evidence in the record that Shawn Needham worked extensively at Briarfield and was actively involved in its present and future plans.

IN RE APPEAL OF BRIARFIELD FARMS

[147 N.C. App. 208 (2001)]

Nonetheless, the County argues that Shawn Needham was not a sound manager because he did not have agricultural science training and did not use the County Extension Office for farming information. The County also points out that, despite its vast acreage, Briarfield's only 1998 income came from the sale of some hay for just over $1,000.00. The County noted that the farm had 195 cleared acres, so the $1,000.00 revenue meant that each acre produced about five dollars of income. The County concluded that these figures cannot be the result of sound management. Additionally, the County placed great emphasis on the fact that Briarfield does not financially support any people, though it is described as a "family farm."

We do not find the County's arguments persuasive. Though Shawn Needham had no previous experience in operating a farm, was not trained in agricultural science, and did not consult the County Extension Office for farming matters, these facts alone do not prove that Briarfield was not under a sound management program. The Tax Commission considered the fact that Shawn Needham had been familiar with the farm from the time his grandparents ran it. Additionally, the fact that neither Bill nor Shawn Needham was trained in agricultural science is of no moment, because there is no statutory requirement that one must have formal training in order to provide sound management. Rather, Shawn Needham's own testimony revealed that he consulted with both his uncle and local farmers to make decisions regarding Briarfield. Based on the foregoing, the Tax Commission had substantial evidence to conclude that Briarfield was under a sound management program, and its conclusion will not be disturbed on appeal.

### (3) Size and Income Requirements

[3] Briarfield argues it was entitled to the farm-use tax exemption because it met the size and income requirements contained in N.C. Gen. Stat. § 105-277.3(a)(1). N.C. Gen. Stat. § 105-277.3(a)(1) requires agricultural land to consist of one or more tracts,

> one of which consists of at least 10 acres that are in actual production and that, for the three years preceding January 1 of the year for which the benefit of this section is claimed, have produced an average gross income of at least one thousand dollars ($1,000). Gross income includes income from the sale of the agricultural products produced from the land . . . . Land in actual production includes land under improvements used in the commercial production or growing of crops, plants, or animals.

IN RE APPEAL OF BRIARFIELD FARMS

[147 N.C. App. 208 (2001)]

Thus, there are two statutory requirements: acreage and income. Briarfield clearly met the acreage requirement; it was a single unitary farm which covered a total of 390 acres, with 220 acres used for grazing cows and growing hay and wheat from 1995-1997, and 195 cleared acres in 1998.

With regard to the income requirement, Briarfield and the County vary greatly on their interpretation of the statute. The County argues that each ten-acre tract of land in active production must produce an annual income of $1,000.00, based on the plural nature of the word "have" in the statute. Thus, the County used the evidence of 195 cleared acres in 1998 to argue that Briarfield should have had a 1998 income of $19,500.00 in order to merit a farm-use tax exemption. Briarfield, on the other hand, argues that the entire property should gross at least an average of $1,000.00 per year, because portions of the statute deal with singular wording such as "one or more," "one of which," and "at least."

After careful consideration of both Briarfield's and the County's positions, we conclude that Briarfield's interpretation of N.C. Gen. Stat. § 105-277.3(a)(1) is correct. When interpreting a statutory provision, "[t]he legislature is presumed to have intended a purpose for each sentence and word in a particular statute, and a statute is not to be construed in a way which makes any portion of it ineffective or redundant." *Peace River Electric Cooperative v. Ward Transformer Co.*, 116 N.C. App. 493, 502, 449 S.E.2d 202, 209 (1994), *disc. review denied*, 339 N.C. 739, 454 S.E.2d 655 (1995), (quoting *State v. White*, 101 N.C. App. 593, 605, 401 S.E.2d 106, 113 (citation omitted), *appeal dismissed, disc. review denied*, 329 N.C. 275, 407 S.E.2d 852 (1991)). The County's interpretation of N.C. Gen. Stat. § 105-277.3(a)(1) is not supported by case law. No provision of the statute mentions dividing land into ten-acre tracts and requiring each tract to produce an annual gross income of $1,000.00. If such a method was envisioned, many farms would be unable to meet the statutory income requirement; this does not appear to be a result intended by the Legislature. Testimony from both Bill and Shawn Needham indicated that the sale of hay alone in 1998 garnered $1,100.00, an amount sufficient to meet the $1,000.00 statutory threshold. Evidence in the record also indicates that, in the three years prior to 1998, the farm's income was well above the $1,000.00 minimum. Thus, we conclude the Tax Commission had substantial evidence before it to conclude that Briarfield met the acreage and income requirements necessary to retain its farm-use tax exemption.

## II. Framing of the Issue

[4] By its second assignment of error, the County argues that the Tax Commission erred in its framing of the issue because it changed the focus of the case, as compared to how the case was examined by the Alamance County Board of Equalization and Review. We disagree.

The Tax Commission stated the issue as follows:

> Is Taxpayer's agricultural land part of a farm unit that is actively engaged in the commercial production or growing of crops, plants or animals under a sound management program?

By contrast, the issue before the County Board of Equalization and Review was whether Briarfield could continue its special use as a dairy farm. The County found against Briarfield on statutory grounds because the Needhams failed to notify the County that the use of the farmland had changed from dairy and breeding operations to the cultivation of ground crops.

The County maintains that the Tax Commission did not consider this aspect of the case, and instead erroneously found Briarfield was "in transition" and overturned the County's assessment. The County believes that finding was incorrect because Briarfield had technically been "in transition" for four years, and all positive moves toward the cultivation of ground crops were done after the County took away Briarfield's farm-use tax exemption. Finally, the County notes that the Tax Commission is required to rely on the standards of the local assessors, rather than on the standards of an independent appraiser or on new evidence. *See In re Allred*, 351 N.C. 1, 519 S.E.2d 52 (1999); and *In re Southern Railway*, 313 N.C. 177, 328 S.E.2d 235 (1985).

Briarfield maintains the Tax Commission properly framed the issues in the case because it comported with the issue framed in the notification letter from the Alamance County Tax Assessor, William J. Grizzle, which told the Needhams their farm-use tax exemption was revoked and gave them an opportunity to disprove the Assessors' conclusion. Moreover, Briarfield correctly points out that there is no mention in either the record or the transcript of how the County framed the issue. Indeed, the County never explained its one-sentence determination that Briarfield was no longer entitled to the farm-use tax exemption.

We conclude that the County cannot prevail on this assignment of error for several reasons. First, the County is barred from discussing

IN RE APPEAL OF BRIARFIELD FARMS

[147 N.C. App. 208 (2001)]

or mentioning information that is not in the record or transcript. See N.C.R. App. P. 9 (1999). Additionally, the Tax Commission's hearing is a trial *de novo* and is not limited by the decision of a county board of equalization and review. *See In re Appeal of K-Mart Corp.*, 319 N.C. 378, 380, 354 S.E.2d 468, 469 (1987) (stating that "although the decision by the county board to grant or deny an exemption is a discretionary one, it is reviewable by the Property Tax Commission"). *Id.* (citation omitted). Third, even if the issue was improperly framed, the County failed to timely object before the Tax Commission and has "waived any affirmative defenses it might have had by its failure to raise them before the Tax Commission . . . ." *In re Forestry Foundation*, 35 N.C. App. 414, 425, 242 S.E.2d 492, 499 (1978), *aff'd*, 296 N.C. 330, 250 S.E.2d 236 (1979). Lastly, it was the County who improperly framed the issue by calling the exemption a "dairy farm special use." The proper issue was whether Briarfield met the definition of "agricultural land" found in N.C. Gen. Stat. § 105-277.3(a)(1). The County's second assignment of error is hereby overruled.

### III.  Briarfield's Failure to Notify County of Status Change

[5] The County next contends that Briarfield's failure to notify it of the transition from dairy and breeding operations to the cultivation of ground crops now bars its eligibility for the farm-use tax exemption. We disagree.

Under N.C. Gen. Stat. § 105-277.5 (1999),

> [n]ot later than the close of the listing period following a change which could disqualify all or a part of a tract of land receiving the benefit of this classification, the property owner shall furnish the assessor with complete information regarding such change. *Any property owner who fails to notify the assessor of changes as aforesaid regarding land receiving the benefit of this classification shall be subject to a penalty of ten percent (10%) of the total amount of the deferred taxes and interest thereon for each listing period for which the failure to report continues.*

*Id.* (emphasis added).

By its very terms, N.C. Gen. Stat. § 105-277.5 imposes monetary fines when a property owner fails to notify the County Assessor of changes in the land's classification. However, the statute does not strip an offending landowner of his right to a classification that the land otherwise meets. In actuality, both Briarfield's dairy and breed-

IN RE APPEAL OF BRIARFIELD FARMS

[147 N.C. App. 208 (2001)]

ing operations and its cultivation of ground crops qualify it as agricultural land farm-use property. As such, the farm's status never changed, and there was no need to notify the County Assessor of a status change. Even if Briarfield was under a duty to notify, the only penalty for its failure to do so was monetary in nature. Briarfield's failure to notify the County Assessor was not a valid ground for the County to rely upon in revoking Briarfield's farm-use tax exemption status; thus, this assignment of error is overruled.

## IV. Basis of Tax Commission's Decision

[6] Lastly, the County maintains that the Tax Commission improperly based its decision on the fact that the County presented no evidence and, in so doing, placed an improper burden of proof upon the County when the burden was the taxpayers' to carry. We disagree.

While it is true the County did not put on any evidence of its own and instead relied on its cross-examination of Bill and Shawn Needham, there is no evidence in the record that the Tax Commission based its decision on that fact. The Tax Commission's decision detailed the evidence upon which it ultimately based its determination. Though the Tax Commission noted that the County did not provide rebuttal evidence to discredit or contradict the Needhams, it clearly noted that any evidence the County presented would have been rebuttal evidence, not affirmative evidence. This realization indicates that the Tax Commission did not place an improper burden on the County.

While the County also argues that Briarfield failed to carry its burden of showing competent, material and substantial evidence that the Assessors improperly revoked its farm-use tax exemption, we do not find this argument persuasive. After careful examination of the record and proceedings below, we conclude that the Tax Commission properly based its decision on the evidence presented.

The decision of the North Carolina Property Tax Commission is hereby affirmed in its entirety.

Affirmed.

Judges WYNN and BRYANT concur.